## THE HEATHCRAIG.

(District Court, S. D. New York. April 11. 1901.)

FOREIGN SEAMEN—COMPLAINT OF INSUFFICIENT FOOD—JURISDICTION DECLINED.

A number of British seamen who shipped in England on a British vessel for a voyage to the United States and return made repeated complaint of the insufficiency of the food furnished. On arriving at New York a partial examination of the matter was made by the British consul on the oral complaint of the men, and he directed their return to the ship. Upon subsequent complaint he directed that a written complaint be filed, and that a thorough examination be made thereon. The men filed no such complaint, but left the ship, and brought suit in a court of admiralty to recover their wages. *Held*, that in the absence of proof of oppression or gross hardship, or that they would not be accorded a fair and impartial hearing by the consul in accordance with the British shipping act, the court should decline jurisdiction.

In Admiralty. Suit by foreign seamen to recover wages.

Carl L. Schurz, for libelants.

Wheeler & Cortis and Charles L. Haight, for claimant.

BROWN, District Judge. The above libel was filed by seven firemen shipped on board the British steamship Heathcraig at North Shields, England, June 16, 1900, for a voyage to New York and other ports and return, with wages at the rate of £4. 10s. per month. Five of the libelants had an advance of £2. 5s., being their wages to the end of June. The vessel arrived in New York on July 4th, the libelants worked on board until July 9th, and then left the vessel on account of alleged insufficiency of food. Five of the libelants claim pay for 8 days, namely, £1. 4s. each, and two of the libelants for 23

days, or £3. 9s. each. On the second day out complaint was made of insufficient food upon the master's allowance, and five days later the complaint was renewed. The captain thereupon gave them until 4 o'clock of that day to elect whether they would go on with the fare that had been furnished them, which was similar to that of the rest of the crew, who made no complaint, or whether they would elect to take their allowance of raw materials according to the scale provided by the articles to be prepared by the cook. The libelants insisted upon being put upon the scale. This was done, while the rest of the crew continued on the ship's fare as before. After two days three of the firemen returned to the ship's fare; the rest continued upon the scale with louder complaints than before. On arrival at New York a partial examination of the matter was made on the seamen's oral complaint before the British consul, who directed that the seamen return to the vessel. Upon subsequent complaint the consul directed that written complaint be filed and that thereupon a thorough examination would be made. No such complaint was filed, but the seamen applied to this court.

I am satisfied that there is very little merit in the claim of these seamen; that they were quarrelsome from the first and had no disposition to get along peaceably, or to make the best of their situation, either under the master's allowance or under the scale and the law under which they had shipped. The scale provided by the articles is inferior to that provided by the laws of the United States; and the old practice of serving out articles in their raw condition for the men to get cooked as they can, is in these days seldom applied, and has now become demoralizing. It led to further trouble, as under present conditions I believe it cannot fail to do, and whenever the men have not deliberately chosen the alternative of the scale, I should use whatever legal authority I have to give them relief against any abuse or harsh consequences. But in this case the scale was deliberately chosen by the men themselves after the master had advised them against it and endeavored to dissuade them from this choice; and after having elected the scale the seamen abused even their own choice; they practically threw away the flour distributed to them and then complain of insufficiency. For the bitter feeling engendered, the men themselves are chiefly responsible. The evidence is in some respects very contradictory; but it seems to me plainly on the whole a case which does not call for the interposition of this court. The libelants having refused to make the written complaint invited by the British consul, as a preliminary to a full investigation of the whole matter in accordance with the British shipping act, which governs the law of the relations between the ship and crew, I think this court upon the facts above stated should decline to take further jurisdiction of the cause. This objection was taken at the outset of the case; but I deemed it best not to act on the objection at that time, as jurisdiction in such cases is discretionary, but to allow inquiry into the facts sufficiently to enable me to understand whether the charges of oppression, or of gross hardship, beyond the legitimate and just consequences of the seamen's own acts, had any substantial foundation; or whether the circumstances were such that an impar-

tial inquiry was no longer likely to be had at the consulate. As I see no sufficient indication of either, the court must decline to intervene further, and the libel is therefore dismissed.